## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:24-cr-00139 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| RONNELL ROGERS | ) | April 25, 2025 |
| | ) | |
| | ) | |

### <u>MEMORANDUM OF DECISION</u>
### RE: DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 43)

Kari A. Dooley, United States District Judge

On July 2, 2024, a federal grand jury returned a two-count indictment against Defendant Ronnell Rogers ("Defendant" or "Rogers") charging him in Count One with Possession with Intent to Distribute and Distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and in Count Two with Possession with Intent to Distribute Fentanyl, Cocaine, Methamphetamine, and Heroin, also in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Pending before the Court is Defendant's motion to suppress items seized from his vehicle on May 2, 2024, as well as statements that he made to law enforcement after the seizure as "fruits" of the unconstitutional search. Defendant asserts, *inter alia*, that the warrantless search of his vehicle was not supported by probable cause. He seeks an evidentiary hearing. The Government opposes the motion as well as the request for an evidentiary hearing. For the reasons that follow, the motion is DENIED.

**Events of May 2, 2024**

In support of the motion to suppress, the Defendant attached three incident reports which document the events of May 2, 2024. Def.'s Exhibits, ECF No. 46. One report details a controlled buy of fentanyl, purportedly from the Defendant by a Confidential Informant ("CI"). Def.'s Ex. C, ECF No. 46. A second report details the vehicle stop and search of the vehicle which followed

the controlled buy.  Def.'s Ex. A, ECF No. 46.  The third report documents an interview by law enforcement agents with the Defendant that same evening.  Def.'s Ex. B, ECF No. 46.  The motion to suppress turns on the question of whether, under the totality of the circumstances, to include principally the information contained in the incident reports, there was probable cause to stop and search the Defendant's vehicle.  The incident reports reveal the following.

On May 2, 2024, at approximately 5:00 p.m., a CI working with the Bureau of Alcohol Tobacco, Firearms and Explosives ("ATF") and the New Haven Police Department ("NHPD") arranged to buy fentanyl in a ShopRite parking lot in East Haven, Connecticut.  The task force involved in the "controlled buy" was made up of ten state and federal law enforcement officers. Relevant here, ATF Task Force Member and NHPD Officer Matthew Borges was the Case Officer and the Reporting Officer assigned to the task force.  He authored the incident report documenting the controlled buy.  This report was dated May 7, 2024.  *See* Def.'s Ex. C, ECF No. 46, at 20–22.

On the afternoon of May 2, 2024, task force members searched the CI and his vehicle prior to his departure.[1]  The task force "took up a surveillance position" near the parking lot and watched the following events unfold: the CI arrived at the parking lot, and once there, contacted "the target." At around 5:45 p.m., a silver Hyundai Elantra with the plates BP-71681 arrived in the parking lot and parked next to the CI.  The CI got into the silver Elantra with a man he later identified as Rogers, who was wearing a yellow hat, black t-shirt with yellow writing, a black and white camo jacket, and black pants.  The CI exchanged money with Rogers for two clear Ziploc plastic bags containing an off-white powdery substance.  Afterwards, the CI exited the car, and an unidentified female entered the car, after which, the silver Elantra exited the parking lot and left the area.

---

[1] The CI's identity and gender has not been revealed, but the Court uses "he/him" pronouns for the sake of clarity.

The reports are silent as to what occurred vis-à-vis the Elantra between 5:45 p.m., when the controlled buy occurred and the Elantra left the ShopRite parking lot, and 6:49 p.m., the time at which Officer Borges' incident report regarding the vehicle stop begins. After the controlled buy, the CI met up with ATF members at a pre-arranged meeting location. The CI provided the two clear Ziploc bags of the off-white powder to law enforcement, and his vehicle and his person was searched again. No money or contraband was found on the CI. At some point, Officer Borges field tested a small portion of the white powder found in the bags, and it tested positive for fentanyl.

During the 6 p.m. hour, at around 6:49 p.m., several NHPD officers, including Detectives Vakos and Huelsman, and Sergeant Macuirzynski, were following the Elantra. The officers had observed a gray Hyundai Elantra with the plates BP-71681 parked on the corner of Grand Avenue and Poplar Street in Fair Haven, which they averred to be a high drug-trafficked area. During the surveillance, the NHPD officers observed an unidentified male on the street pace back and forth, lean into the gray Elantra, and then walk away; they then observed a similar interaction with another unidentified male in a vehicle. The officers did not directly observe any contraband exchange hands. The Elantra continued driving around Fair Haven and New Haven, and the NHPD officers continued to follow it, never losing sight of the vehicle. The Elantra pulled over in front of Amistad Academy Middle School at 130 Edgewood Avenue, at which point, the female passenger exited the vehicle and then returned with a juvenile female.

After the driver of the gray Elantra failed to properly use his turn signal, Detectives Vakos and Huelsman activated their lights and sirens and directed the Elantra to pull over. The Elantra did not immediately pull over, but continued changing lanes until finally pulling over. The driver of the vehicle, who was identified as Rogers, was holding "two (2) bags of greenish brown plant like substance common with marijuana in his lap." Def.'s Ex. A, ECF No. 46, at 10. Also in the

car was the front-seat passenger, Ashley Bailey, and the juvenile passenger in the back seat. Officer Borges, one of the NHPD officers participating in the stop, asked Rogers, who was "extremely nervous" and "visibly shaking," to step out of the vehicle. *Id.* Officer Borges also asked Bailey and the juvenile passenger to step out of the vehicle, which they did. Rogers and Bailey were both detained and placed in handcuffs while Officer Borges searched the vehicle. Officer Borges checked the interior of the vehicle for any hidden firearms or contraband where Rogers could reach; in the glove compartment in front of the passenger seat, a "large plastic bag containing a large amount of a white rock like substance common with packaged crack cocaine and several small envelopes which is common with packaged heroin" were found. *Id.*

Officer Borges tested the substances found in the gray Elantra, which tested positive for cocaine and fentanyl. Sergeant Macuirzynski read Rogers his Miranda rights while on scene, and he was arrested on narcotics charges and taken into custody on-site. Rogers was brought to the NHPD station, where ATF task force members—including ATF Special Agents Rettig and Fuller—were waiting. Special Agent Rettig advised Rogers again of his Miranda rights, and Rogers agreed and signed a written Miranda waiver. Def.'s Ex. B, ECF No. 46, at 13, 15. Rogers allegedly admitted to possessing the narcotics during the post-arrest interview with Rettig and Fuller. He denied being a part of any criminal gang and detailed how he intended to give the money from the drug sales to his child's mother.

**The Motion to Suppress**

Defendant seeks to suppress the items seized from his vehicle as well as his post-arrest statements on the grounds that the warrantless search of the vehicle was not supported by probable cause and that his statements are "fruits" of the illegal search of his vehicle. Mot. to Suppress, ECF No. 43, at 4, 11–12.

Defendant argues that the incident reports do not support a finding of probable cause because they do not establish a connection between the officers who conducted the controlled buy and the officers who eventually stopped and searched the gray Elantra.[2] *Id.* at 7. In response, the Government asserts that the incident reports demonstrate that Officer Borges, the author of the reports which detail the controlled buy and the vehicle stop, was present at both the controlled buy and the vehicle stop, and because Borges had knowledge of the controlled buy, he had probable cause to search the vehicle for evidence of the drug transaction. Gov't Opp'n, ECF No. 48, at 12–13. Defendant challenges the assertion that the reports establish that Borges was present at the controlled buy and further seeks an evidentiary hearing to challenge the factual narrative of the reports and the reliability of Officer Borges' representations therein. Def.'s Reply, ECF No. 49, at 1–2.

Having considered all of the submissions, the Court concludes that the motion to suppress should be denied and that no evidentiary hearing is necessary in order to render that decision.

**The Fourth Amendment—The Automobile Exception**

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (quoting U.S. Const. amend. IV). "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.''" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "In most cases, reasonableness requires a warrant and probable cause." *United States v. Lifshitz*,

---

[2] Defendant also contests, and the parties brief in the alternative, whether the events of May 2, 2024, could fairly be characterized as a search incident to arrest or a *Terry* stop that ripened into probable cause. Mot. to Suppress at 8–10; Gov't Opp'n, ECF No. 48, at 7–9, 14–15. As the Court concludes that probable cause for the search existed before the stop, it does not address the competing alternative narratives under which the warrantless search was justified or not.

369 F.3d 173, 178 (2d Cir. 2004).  Indeed, searches conducted without a warrant are "'*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)).  "Once a defendant with a reasonable expectation of privacy in the area searched challenges a warrantless search as unreasonable under the Fourth Amendment, the burden is on the government to demonstrate that the search was within one of the recognized exceptions."  *United States v. Peña Ontiveros*, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008), *aff'd sub nom. United States v. Rico Beltran*, 409 F. App'x 441 (2d Cir. 2011).

Relevant here, the "automobile exception" allows police to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime."  *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004).  The Supreme Court has articulated two "distinct theories" that underpin this exception: first, that individuals have a lower expectation of privacy in their vehicles than in their homes, and second, that the inherent mobility of vehicles creates an exigency for law enforcement.  *See United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007); *Navas*, 597 F.3d at 497.  The permissible scope for a search under the automobile exception "is defined by the object of the search and the places in which there is probable cause to believe that it may be found."  *United States v. Ross*, 456 U.S. 798, 824 (1982).  Therefore, if the probable cause justifying a search includes the entire vehicle, "the permissible scope of the search pursuant to this exception includes every part of the vehicle and its contents including all containers and packages that may conceal the object of the search."  *United States v. Wilson*, 699 F.3d 235, 246 (2d Cir. 2012) (internal quotations and citations omitted).

**Probable Cause**

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. Probable cause is assessed based upon the totality of the circumstances and may be found where a law enforcement official "has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Howard*, 489 F.3d at 491 (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). "[P]robable cause is a flexible, common-sense standard . . . [and] the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Texas v. Brown,* 460 U.S. 730, 742 (1983) (citation and internal quotation marks omitted). Finally, the government bears the burden of establishing probable cause for a warrantless search of a vehicle under the automobile exception. *United States v. Feliz*, 657 F. Supp. 2d 364, 371–72 (E.D.N.Y. 2009).

As relevant here, courts have found that when an officer witnesses a controlled purchase, and thereafter conducts a warrantless search of a vehicle involved in that controlled purchase, probable cause exists to search the vehicle for the contraband involved in the controlled purchase. *See United States v. Aziz*, No. 7:21-cr-113-01 (PMH), 2024 WL 1307170, at *4 (S.D.N.Y. Mar. 27, 2024) ("Here, the credible evidence establishes that the officers had probable cause to stop the vehicle, and then search and arrest its sole occupant, based on information received in a briefing from other officers who were aware of controlled purchases of narcotics made by a confidential informant and from Defendant."); *United States v. Acevedo*, No. 3:23-cr-35 (KAD), 2024 WL

2941664, at *6 (D. Conn. June 11, 2024) (finding probable cause existed where vehicle was used in connection with controlled purchase); *United States v. Williams*, 339 F. Supp. 3d 129, 133 (W.D.N.Y. 2018) ("[P]robable cause supported issuance of the search warrant . . . . [because] the controlled purchases observed by law enforcement independently corroborated the CI's information.").

**Evidentiary Hearing**

In his motion, the Defendant also seeks an evidentiary hearing to allow him the opportunity to develop the factual record as to which officers were present at the controlled buy and which were involved in the vehicle stop so as to test the presence of probable cause. Def.'s Reply, ECF No. 49, at 3.

A defendant is entitled to an evidentiary hearing if he can demonstrate a contested issue of material fact. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). The defendant must offer "sufficiently definite, specific, detailed, and nonconjectural" information so as to enable the court to conclude that there are contested facts which go to the validity of the search. *Id.* To satisfy this obligation, a defendant must submit sworn factual allegations from a person with personal knowledge of the events at issue. *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989). In the absence of such an affidavit, no evidentiary hearing is required. *Id.* Nor is a hearing required if the defendant's allegations are general and conclusory. *Id.*

**Discussion**

Here, Defendant does not argue that the CI was unreliable or that there was any flaw in the task force's handling of the CI or the controlled buy itself. Rather, the Defendant challenges whether the officers involved in the vehicle stop had knowledge of the controlled purchase, so as to be able to rely on the controlled purchase as establishing probable cause.

As an initial matter, the Court observes that the incident reports relied upon are hardly models of clarity. And they certainly leave unanswered a number of questions as to the details of what occurred on the evening of May 2, 2024, following the controlled buy.[3] But the reports establish, by inference or directly, at a minimum, the following: Officer Borges was aware of and involved in the controlled purchase before it took place; Officer Borges had knowledge of the controlled purchase between the CI and the operator of the Elantra; and Officer Borges participated in the vehicle stop, search, and subsequent arrest of Rogers, who was identified as the operator of the Elantra. The incident report for the controlled buy, written by Officer Borges, shows that Officer Borges was identified as among the "Police Personnel" involved in the operation. Def.'s Ex. C, at 20. Indeed, Officer Borges was identified as the "Case Officer" on the operation. And the incident report for the vehicle stop shows that Officer Borges was one of the officers who stopped the vehicle, who *personally* asked Rogers to step out of the vehicle, and who *personally* searched the vehicle and Rogers for contraband. Def.'s Ex. A, at 10. As the Government points out, Officer Borges uses the first-person pronoun "I" to describe the vehicle stop and search that he does not use for other related events that he was presumably not personally involved in. For instance, Borges, as author of the report, writes, "**I** asked Rogers to step out of the vehicle," and "**I** checked the interior of the vehicle for hidden firearms or hidden contraband." *Id.* (emphases added). Importantly, as already observed, Officer Borges wrote *both* the report for the vehicle stop

---

[3] The Court had originally inferred from the incident reports that Officer Borges was at the controlled buy, then left the ShopRite parking lot to meet up with the CI at the pre-arranged meeting location, field tested the two bags of suspected fentanyl, and then left to meet back up with the NHPD officers who stopped and searched Rogers' vehicle approximately one hour later. However, the Government, in a footnote in their opposition, represents that this timeline is incorrect, and that Officer Borges field tested the suspected fentanyl *after* Rogers' vehicle was stopped and searched. Gov't Opp'n, ECF No. 48, at 5 n.3. The Court stands corrected. But the motion to suppress does not turn on the timing of the field test, but rather, on Officer Borges' knowledge of the controlled buy prior to the vehicle stop. And as the Court explains, the reports *do* support the reasonable inference that Officers Borges was present at both the controlled buy and the vehicle stop, which is the finding that supports probable cause in this case.

and the controlled buy, showing that, at a minimum, he had knowledge of each incident at the time.

In his reply brief, Defendant contests that Officer Borges was present at or had knowledge of the controlled buy before the vehicle stop. He argues (1) Officer Borges' label as the "Case Officer," means only that he had an administrative role from which prior knowledge of the controlled buy cannot be inferred; (2) the incident report for the vehicle stop makes no mention of the controlled buy, from which the inference should be drawn that he had no knowledge of the controlled buy prior to the vehicle stop; and (3) the incident report for the controlled buy was written five days after the report for the vehicle stop, from which the inference should be drawn that Officer Borges did not have real-time knowledge of the controlled buy and subsequently drafted the report to intentionally mislead the reader that he did have such real-time knowledge. Def.'s Reply, ECF No. 49, at 2. The Court rejects these arguments. As already noted, the Court agrees that the incident reports are imprecise at best. But they are sufficient to support the inference that Officer Borges had knowledge of and participated in the controlled buy and they directly document his involvement in the vehicle stop.[4] And Defendant has presented no evidence to rebut these conclusions aside from cynicism and speculation that Officer Borges may have lied or been purposefully misleading in his authorship of both reports. Indeed, Defendant did not submit a sworn affidavit from Rogers or anyone else to raise a question of fact as to whether Officer Borges was aware of the controlled buy at the time of the vehicle stop. *See United States v. Brito*, No. 24-cr-1 (KAM), 2025 WL 838708, at *6 (E.D.N.Y. Mar. 18, 2025) ("An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite,

---

[4] Although not submitted, the Government proffered, and the Defendant did not disagree, that video evidence provided in discovery shows Officer Borges both at the vehicle stop and at the meeting with the CI immediately after the controlled buy. In light of this, it is puzzling that Defendant continues to advance his alternative (speculative) narrative that Borges had no knowledge of the controlled buy.

specific, detailed, and *nonconjectural* to enable the court to conclude that contested issues of fact going to the validity of the search are in question." (emphasis added) (alteration omitted) (quoting *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005))).

Officer Borges' knowledge of the controlled buy established probable cause to search the vehicle involved in the controlled buy—the silver Elantra with the plates BP-71681—for evidence of that crime, to include contraband.  Even though the reports do not detail exactly where Officer Borges was for approximately one hour between the controlled buy and the vehicle stop, probable cause for the search did not dissipate in the hour after the Elantra left the parking lot (while being surveilled), but before the stop and search of the vehicle.  *See United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 348 (S.D.N.Y. 2014) (finding that passage of "a few months" between observed criminal activity and the warrantless search of a vehicle involved in the crime was not sufficient for probable cause to go stale).  It was more than reasonable for Officer Borges to believe that the Elantra contained fentanyl, which was the subject of the controlled buy, as well as other evidence tied to the crime.[5]  Thus, the automobile exception to the warrant requirement applies, and for the reasons discussed, no evidentiary hearing is required.

**Conclusion**

For all of the foregoing reasons the motion to suppress is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of April, 2025.

/s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[5] Such evidence might also include the phone through which the CI made contact with the Rogers; the cash paid for the narcotics; known "tools of the trade"; documents demonstrating ownership or use of the vehicle; onboard systems which might reveal vehicle locations; etc.